

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | WD76791 |
| | ) | |
| JUSTIN R. CARDWELL, | ) | Opinion filed: January 13, 2014 |
| | ) | |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI
## THE HONORABLE PATRICIA S. JOYCE, JUDGE

Before Division Two:  Victor C. Howard, Presiding Judge,
James E. Welsh, Judge and Anthony Rex Gabbert, Judge

After a bench trial, Justin Cardwell was convicted of driving while intoxicated, section 577.010.[1]  Cardwell was sentenced to three years in the Department of Corrections, the execution of which was suspended for Cardwell to be placed on five years of supervised probation following forty-five days of shock detention in the Cole County Jail.  On appeal he argues that the trial court should have granted his motion to suppress evidence.  For the reasons stated below we reverse Cardwell's conviction and sentence.

## Factual Background

Cardwell was charged in the Circuit Court of Cole County with the class D felony of driving while intoxicated- persistent offender, Section 577.010, for events that occurred on September 16, 2011.

---

[1] All statutory citations are to RSMo 2000, unless otherwise indicated.

On June 4, 2013, the case was tried to the court. In a motion to suppress Cardwell argued that, because the officer who stopped him did not have reasonable suspicion or probable cause to do so, all evidence obtained thereafter should be suppressed. His motion was denied. The State then presented evidence that on September 16, 2011, on Kautsch Road at approximately 1:00 a.m., Cardwell drove his vehicle while intoxicated. After the close of all the evidence and the arguments of both counsel, the trial court found Cardwell guilty of felony driving while intoxicated and sentenced him to three years in the Department of Corrections, with the execution of the sentence suspended, and Cardwell was placed on five years of supervised probation. Cardwell appeals.

Further facts pertaining to the circumstances of Cardwell's arrest and conviction will be outlined as relevant in the analysis section.

**Analysis**

In his sole point on appeal, Cardwell argues that the trial court erred in overruling his motion to suppress evidence, and subsequent objections to that evidence obtained after the stop of Cardwell's vehicle, because the officer did not have reasonable suspicion or probable cause to stop Cardwell's car.

Appellate review of a trial court's overruling a motion to suppress consists of considering the evidence presented at both the suppression hearing and trial in order to determine if the record contains sufficient evidence to support the trial court's ruling. *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). This Court defers to the factual findings and credibility determinations made by the trial court and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007) (internal citations omitted). The legal issue of whether reasonable suspicion exists is reviewed *de novo*. *State v. Lovelady*, 432 S.W.3d 187, 190 (Mo. banc 2014).

"At a motion to suppress hearing, the State bears the burden of proving that the seizure was constitutionally proper." *Pike*, 162 S.W.3d at 472. The Fourth Amendment to the United States Constitution guarantees that individuals will not be subject to unreasonable searches or seizures. U.S. Const. amend. IV. "Warrantless seizures are generally unreasonable and, therefore, unconstitutional, unless an exception applies." *Lovelady*, 432 S.W.3d at 191.

The State urges that the detention of Cardwell was a "*Terry* stop", which is a common exception, permitting an officer to make a brief investigatory stop if he or she has a reasonable suspicion that illegal activity has occurred or is occurring. *Id.* Reasonable suspicion is a less stringent standard than probable cause, and is present when an officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Id.* (quoting *State v. Waldrup*, 331 S.W.3d 668, 673 (Mo. banc 2011) quoting *State v. Mack*, 66 S.W.3d 706, 709 (Mo. banc 2002)). For reasonable suspicion to exist, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the officer's stop. *Terry v Ohio*, 392 U.S. 1, 21 (1968).

Here, Cardwell argues that when the officer initiated the stop he did not have reasonable suspicion or probable cause to believe that Cardwell's behavior suggested that he may be involved in illegal activity, and thus the officer's stop and seizure of Cardwell was unreasonable and evidence obtained thereafter should have been suppressed. We agree.

It is not disputed that after the police stopped and made contact with Cardwell, the officer testified that he observed Cardwell to have watery, bloodshot eyes, could smell the odor of alcohol from his car, and Cardwell admitted to the officer that he had been drinking. However,

3

the propriety of Cardwell's detention, which led to his subsequent arrest, turns on whether the police legally stopped his vehicle in the first instance.[2]

Sergeant Dane Huffman with the Cole County Sheriff's Department testified that on September 16, 2011, he was on Kautsch Road, on his way to assist another officer, at approximately 1:00 in the morning, when he observed a vehicle in front of him traveling "very slow." Kautsch Road is gravel and "not a very wide road." He testified that he quickly caught up with the vehicle, which was traveling in front of him and going in the same direction. Sergeant Huffman testified that the vehicle then stopped in the right hand lane and the driver motioned for him to go around and left him room to do so. Sergeant Huffman said he instead chose to "check on the driver, make sure everything was okay[,]" and so he turned his lights on "so that he would know that it was a deputy behind him and that it wasn't someone that was possibly a threat to him and also as a warning beacon to anyone else that would come up behind us or a beacon for other deputies should I need help." At that point, Sergeant Huffman testified that he contacted the driver and had him show his driver's license. Sergeant Huffman said although Cardwell then told him he was fine, Sergeant Huffman could smell alcohol coming from inside the vehicle.

During cross-examination, Sergeant Huffman testified that when he came up from behind Cardwell's car, it stopped, and the driver motioned for him to go around, but that was when he turned on his lights instead. At that point he had not observed the vehicle commit any traffic offense. Sergeant Huffman testified that most people do not drive fifty-five miles per hour on a gravel road, indicating his perspective that driving slower than that was not "unusual conduct which [would] lead[] him reasonably to conclude in light of his experience that criminal activity

---

[2] The seizure of Cardwell's person occurred when the officer activated his emergency lights. At that moment a reasonable person would have believed he was not free to leave. *State v. Dixon*, 218 S.W.3d 14, 19 (Mo. App. W.D. 2007).

4

may be afoot" as required for the existence of reasonable suspicion. *Lovelady*, 432 S.W.3d at 191.

However, "whether an officer lacked reasonable suspicion 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and *not on the officer's actual state of mind at the time the challenged action was taken*.'" *Id.* (quoting *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985)) (emphasis added). An objective assessment of the events leading to Sergeant Huffman's stop of Cardwell fails to reveal any specific and articulable facts and rational inferences therefrom that would reasonably warrant the stop. Driving slowly on a rural gravel road in the early morning, coming to a stop when quickly approached from behind by another vehicle, and motioning the approaching vehicle to go around with adequate room to do so does not constitute "unusual conduct" leading reasonably to a conclusion that criminal activity is taking place. There was no indication Cardwell's vehicle was in any way disabled or that Cardwell was in need of help. In fact, Cardwell waved the officer on.

Even considering all evidence and reasonable inferences in the light most favorable to the trial court's ruling, there is nothing in the record indicating that Sergeant Huffman had reasonable suspicion that illegal activity had occurred or was occurring. Circumstances that may stimulate mere curiosity are insufficient to permit an investigatory stop.

The judgment of the trial court convicting Cardwell of driving while intoxicated is reversed.

_____
VICTOR C. HOWARD, JUDGE

All concur.

5